et al. Oral argument not to exceed 15 minutes per side. Mr. Pugh for the appellant. Good morning. May it please the court, counsel, I'd like to reserve three minutes for rebuttal. My name is Benjamin Pugh. I represent the plaintiff. For brevity I'll call her Ms. Enriquez. First I would like to concentrate my argument on the Bivens Fourth Amendment claim and whether or not it arises a new context. This case presents a straightforward Bivens question. Does the arrest and imprisonment of plaintiff by low-level ICE officers permit a Bivens action where defendants admit the arrest and imprisonment occurred without any factual basis to assert probable cause and no federal policy is challenged or even implicated by the relief sought? As this court is held in Jacobs, the answer to that question must be a definitive yes. The core holding of Bivens is recognizing in limited circumstances a claim for money damages against federal officers who abuse their constitutional authority. This is exactly that case. It's line-level officers who the record confirms arrested an imprisoned plaintiff with no factual basis for probable cause or a warrant. Isn't there arguably a difference between this case and Bivens in that Bivens involved Federal Bureau of Narcotics investigators and yours involves ICE and Bivens did not involve immigration and yours involves immigration. So given the strictness that the Supreme Court has indicated about limiting Bivens cases to Bivens situations, how can we say yours is just a Bivens case? Well there's the two-part analysis when you're looking at a Bivens claim. I mean the first part is the factorial test to see if it arises in a new context. And when you look at those factors and we do list a lot of different cases where the other line-level officers under different agencies have been sued. Even in Justice Sotomayor said there are 83 different law enforcement agencies. But there are several post-Bivens cases involving immigration involving border patrol officers who where the U.S. Supreme Court has said that a Bivens action cannot be maintained. So why isn't your case more like those instead of like the Bureau of Narcotics people who are domestic people doing domestic work in the Bivens case theoretically? And that's your right. At the border you lose all kinds of constitutional guarantees. I mean you lose Fourth Amendment rights to search and seizure and it involves certain national security issues which is not an issue here. This is line-level ICE officers located in Louisville, Kentucky and their basis to arrest her was not there. They did not have the right to lawfully detain her. I'm unclear about what the state of the record is. Is there an admission that they were not acting on immigration powers in this case or is that a contested issue or were they exercising immigration authority powers? I'm just confused as to what the status is. Right, well I mean all the facts should be held and weighted in our favor and there are disputed facts about, you know, well they claim they're disputed but in their briefing they admitted all the facts in the complaint as true. They admitted that they looked at what's called the ELIS2 database that showed she had current lawful status in the United States. Their own records custodian confirmed that they looked at that database. So they were not operating under any authority to detain her. There was no authority granted by any statute or anything to detain her when she had lawful status in the United States. Does it matter, so her lawful status was tied to, she had a removable order and then DACA suspended the order. Isn't that a sensitive question? I mean the court took the case about whether DACA was legal or the rescission of DACA was legal. The court decided it on procedural grounds but several justices said DACA was flat out illegal. Don't you think it's kind of, wouldn't this require us to get into the lawfulness of DACA which is maybe a reason to act with caution because her lawful status and maybe the constitutional claim depends on whether she's here lawfully and that depends on the validity of DACA versus the immigration laws. Well no because first of all this happened in 2017 so we have to look at what was in place in 2017 and at that time DACA was affirmative relief and it didn't matter whether there was a final. Does it matter whether DACA is lawful under the INA? No. Why not? Why wouldn't we have to get into that for purposes of a constitutional claim where you're seeking money damages? It seems to me whether the Fourth Amendment has been violated depends on, in some respects, on her status which in some respects depends on the lawfulness of DACA. Well I mean that depends on what her status was at the time and she had lawful status at the time and that issue is not before the court. The lower court didn't rule on that. We haven't really briefed that topic at all. We would need time to address that if that is going to be an issue this court decides upon. The issues right now are whether or not this rises in a new Bivens context. That's my only point. I don't think we should resolve it. I just think that is a reason why maybe we should act with caution before we authorize Bivens actions in this context. Well in this instance though it doesn't really affect policy. I mean that hasn't been ruled on. I mean she's still in the United States as we speak. But at the time in 2017 she had lawful status and they knew she had lawful status. They knew that that final order removal was not enforceable and this court held in Enriquez 1 that it was not enforceable, it was not executable. So where is there an admission by the government that they knew at the time that they detained her that she had lawful status? Well in their briefing they said assume for the purposes of this motion all facts in the complaint are true. And those are contained in the complaint. I believe it's... But that's for the purposes of the motion. Correct. So you're saying for the purposes of this case then because the motion is in this case for purposes of this case at this time we should make that assumption because they conceded the assumption for purposes now. But then if we were to say a Bivens action can go forward they wouldn't be bound by that assumption would they because it was just for purposes of this case. That's what we're asking for. We're asking for the opportunity to depose and cross-examine them. I mean right now what we have are three contradictory declarations by Newman where the first one he says nothing about the ALIS 2 database. The second one he doesn't. It's only until their own records custodian comes out and says yeah he looked at this database. Does he change his declaration and contradict himself? We need the opportunity to cross-examine him on that. And even if the database, whatever the database shows, she actually had proof that she had DACA on her. That she had lawful status. That work authorization ID that has a specific designation of C-33 you can only get if you have DACA. So what was their express theory for why they arrested her? Their express theory is that there was a final order of removal. And that's what they saw in the database. But the database also shows that she has DACA. And a well-trained ICE officer is going to know that you can't detain somebody if they have DACA. So you can distinguish the Supreme Court cases as being about the border. But there's that recent 5th Circuit case that suggests, Hernandez I guess is the name, suggests that the circuits have overwhelmingly suggested that Egbert would apply to immigration officers inside the country as much as at the border. Do you think that we would be creating a pretty lopsided circuit split if we agreed with you? No, because it's about line level officers. And this is about just normal... Were those other circuit cases about like high level officials in Department of Homeland Security or were they about line level officers? I can't really answer that. I mean, I know that, for example, Hicks is about a U.S. Park ranger. So the agency is really not determinative. And I believe there was another case recently... The one I read this morning was Hernandez out of the 5th Circuit and it seemed to be line level officers. I may be mistaken. But is that the only distinction you have? I think it was cited in a CJA letter, but it came out relatively recently. Well, there's two Hernandez cases, Your Honor, and I'm not really sure which one. Hernandez v. Meza actually... No, not the Supreme Court case, the 5th Circuit case. Versus Kazi in the 5th Circuit in 2024. Well, and I think that that also involved an excessive force claim where he was shot in the arm. But this is... The logic of the opinion, as I understood it, was in Egbert, the court made clear that it's a new context if it's a different category of defendants. And the court suggested that immigration officers are a different category of defendants. That legal logic would seem to apply here, whether there are any factual differences. Then I'm not sure why Hicks decided that you can have an action against a U.S. Park ranger, which is a different category of defendants, but we're looking at the constitutional violation. And that's only just one factor you look at anyways, Your Honor. And when they're talking about new context factors, they're factors, they're not elements. And those factors, the burden of proof is on defendant, according to Jacobs. And when you're looking at those factors and you look at all the rest of the factors, they weigh in our favor in terms of not finding this in a new context. You have line level officers. The constitutional right at issue is the Fourth Amendment. They knew that she had current legal status. The official action is identical to the one espoused in Bivens. And there's no impact on agency policy or foreign policy. And they didn't really even, really elicit one. There's no way for us to even argue if they say it may affect INS policy when we don't have that record before us. There's no policy that's going to be affected. On top of that, these ICE officers are operating under both Department of Justice guidelines and policies and Department of Homeland Security policies and guidelines. And that's an 8 CFR 287.8G. So they're acting under Department of Justice guidelines. It should be the same. Can I ask you about the habeas? Why isn't the habeas, so getting to the second step, is your position that habeas was not a viable remedy because of the exclusive provisions of the INA? Or is your point that habeas was a viable remedy, but it just happened too quickly and she was released? Well, she filed habeas, but I don't think that's an adequate remedy anyways, because how do you get eight days back? That's not an adequate remedy. And Loper v. Bright said – Egbert says it doesn't have to be complete relief. So I would understand the argument if your position was habeas is just completely foreclosed in this context. But if your argument is just it's not complete relief, doesn't Egbert suggest that's inadequate to – That's only if you get to the second step, if it's arising in a new context. Yeah, I would agree with that. And I'm still focusing on this doesn't arise in a new context. So would you agree that if we got to the second step, then that would be a reason to find no Bivens? No, because it was deemed moot, the habeas petition. It was what? Deemed moot because she was released. Correct. But doesn't that show in a sense that she got the relief that she should have gotten through habeas because they realized the error of their ways and released her? Well, I can address that on rebuttal if you'd like me to, Your Honor. I don't want to take up too much. If you have an answer now, that's fine. That's not relief. And even if you're talking about a remedial provision to send it back down to the INA because they have a complaint process, Loper Bright says they don't have the power to address constitutional violations. Thank you. Good morning, Your Honor. Tim Thompson here on behalf of the defendants. May it please the Court. The District Court faithfully applied binding and persuasive precedent and concluded that Plaintiffs' Fourth and Fifth Amendment Bivens claims arose in new contexts and there were remedial schemes and special factors suggesting that Congress is better situated to decide whether to create a new damages remedy. This Court should affirm the District Court's decision. With regard to the new context, the District Court compared Bivens and looked for any meaningful difference between that case and this case and identified several meaningful differences. And those meaningful differences have been identified in other cases that we cited. The Hernandez Fifth Circuit case, for example, were two low-level line ICE officers. In fact, they were actually responding to a suspected criminal violation in that case, which would draw that case closer to Bivens than what is at issue here. And yet the Fifth Circuit still held that there were no Bivens claims. But that's the Fifth Circuit and we don't have to follow the Fifth Circuit. So why isn't this very similar to Bivens in that in Bivens it was the Federal Bureau of Narcotics Agents wrongfully seizing the person, Bivens. And here, line agents of the INS are wrongfully, in their opinion, seizing the plaintiff here. Well, the Supreme Court in Egbert pointed to the Ninth Circuit's reasoning and said to distinguish or to compare and focus on those two similarities is to focus on a superficial similarity. We should instead focus on, in the Hernandez case and other, pardon me for my voice, have pointed to meaningful differences. So what is the meaningful difference? A new category of defendants is a meaningful difference. Bureau of Narcotics officers enforcing criminal law. Immigration officers enforcing immigration law. Indeed, that touches on a second meaningful difference, which is the statutory scheme under which they're operating. The Supreme Court has identified that as a new context. Immigration versus criminal law. There's also factual differences that many courts have latched onto and identified those as meaningful differences, including, in the Bivens case, it was a man who was at his home. He was, there was a warrantless search and a warrantless seizure. In this case, it was, the situation arose at the Louisville ICE office. There was a warrant for removal and a final order of removal, albeit this court found that they were unenforceable. Well, but did, did you admit that there was a check of the database such that your agent knew that the warrant, that the order of removal was no longer operative because of DACA? So for the purposes of qualified immunity, which we're not getting to and we ought not get to because Bivens should resolve this matter, that was where we conceded facts because we needed to. In this case, and for Bivens purposes, we don't need to get into any of those factual issues because there's only, the new context analysis can be determined, determined simply by looking at the status of the officer, the category of the officer, the statutory scheme, the facts in which this case arose that are undisputed. And so those weren't issues that were actually presented. Now there is a declaration in the record as it goes to the, because it related to our prior, the prior appeal. Then in that case, the ICE officer conceded what the computer said that he had searched the database but stated that he did not know that the plaintiff had active DACA at the time she was detained. But why, why should it matter if the seizure was at a home or at the INS office? Why should that be a factor that should be significant? That's just in line with how the Supreme Court has started to restrict and order courts to. It sounds like you don't have a good reason for saying that's a significant difference if you're saying, well, the Supreme Court is being extremely picky about things. No, I think, I think there's also a significant difference. The law recognizes the home as kind of a sacred space, the Fourth Amendment, versus coming into a Louisville ICE office voluntarily. She wasn't, she wasn't called in. She was, she was coming to actually bond somebody out. She was, she was arrested and detained. You know, you could make the argument that there should be more perfect justice when you're at a government office, that there should be a higher responsibility on the part of the agents to be careful about arresting somebody. And there's, there's record evidence, although, again, this, the District Court didn't get into this when it was analyzing the new context analysis. And, indeed, in the Supreme Court, the Hernandez case, for example, the Hernandez-Mesa case, that was a cross-shooting case, a cross-border shooting case. In the District, the Supreme Court, there were contested facts below related to what the individual might have been doing to the officer before he was shot. And the Supreme Court didn't feel that it was necessary to focus on those facts because it could move to, oh, there's very obvious differences that take this case that are meaningfully different. But, and, and that was a border case. But this isn't a border case. This is in the, in the safety of Louisville, where the government agent says that in one of the declarations, there's the idea that he checked the database, found that this DACA applied, and yet arrests her, and then she's detained for more than a week. And in that, in some of those declarations, he not only just looked at the database, he actually sought assistance from other folks to try to check their databases. It wasn't a, a quick check. It went on for a period of time, trying to, trying to search for evidence. But, again, this isn't what the, the Supreme Court has instructed us to focus on looking at a, at a granular level, in a sense, but also, we don't need to get to all those details because of the, the significant differences that are, that are apparent on the face of the complaint. So if it had been an FBI agent rather than an INS agent arresting her, would that be analogous to the Federal Bureau of Narcotics agent in Bivens? I think at that, at that very, at that one level of detail, I believe courts have said that, yes. Now, there's still the immigration versus criminal enforcement at issue, the statutory schemes that are issued, you know, that are different. So, so I don't want to, if an FBI agent was enforcing immigration law, I don't, I don't, those are details I don't want to get into. What if it was a different criminal law? I'm sorry? What if it was drug law? I think Bivens was a drug law case. It was, yes. What if it was, I don't know, money laundering or the search of, for any other federal criminal law? I think that's actually kind of an open question, Your Honor, right now. I think different circuits are taking different approaches to how the Supreme Court has instructed in, in Ziegler and Hernandez and, and Egbert. Then how, whether, whether the circuit should look to their own law as applying Bivens or whether they should look only to the Bivens case. I believe the seventh circuit. It seems quite arbitrary, I gotta say. To say that drug laws versus, like, gun laws, if it was a felon in possession case, that that would be a meaningful distinction. I mean, why, why doesn't, why, that would essentially be saying that we, that Bivens is basically limited to its facts. Is, is that your position, that essentially that's what the court said? I think that's, that's really close to what the Supreme Court has said, yes. But I think it's also, we're stepping back and looking at what the whole point of this is and why, who, the point is, who should be deciding whether a cause of action exists? What, what about states? What, what if they had brought a state claim under Kentucky false imprisonment and false arrest laws? So it would be just state torts. I assume your defense would be preemption. But then their defense to your defense would be no, the state laws or the federal laws under which you're preempting are unconstitutional as applied here because you violated my Fourth Amendment rights. What would be, I mean, that would be the way of thinking about it at the time of the founding, it seems to me, how you would enforce a Fourth Amendment claim against a federal officer would be a state tort suit. Is that invalid today? And what would invalidate it? Well, that wouldn't be assorted under Bivens, like you said. That would be, but the federal, right. Under state law, everybody agrees you have a common law. Cause of action under state law.  And the only question would be, what would be your defense to that? Well, the Federal Tort Claims Act would then be the vehicle under which a party can sue under state tort law. And there are exceptions to that and there are nuances to that that are beyond the, you know, beyond what I could go into today. But yes, that's exactly the, that's the vehicle for asserting. So if they did that and then would, so the Federal Tort Claims Act, I assume would have some type of exception for here would be my instinct. And then they might have a defense that that would violate the Fourth Amendment. I think there's actually perhaps an exception to an exception that then gets into, you know, pretty deep, pretty deep waters. So does the Federal Bureau of Narcotics exist today? It does not. So in a sense, Bivens then, under your position, there is no Bivens action. No, that's not how the Supreme Court has portrayed it. They've identified that the Bureau of Narcotics, I think it got folded into the Department of the Treasury at some point. But it's also... Probably it's part of the DEA. It could be, yes. But, and that's where I think, I think what more circuits have done is to expand and to say what we're focused on in Bivens is the criminal action, line-level officers, you know, in the Fourth Amendment context, although I can't speak to all those cases and that is beyond what this case is about. So why is immigration so different than the policy issues that there would be in enforcing the drug laws? Numerous courts have pointed to those differences, including that they implicate national security, that they implicate foreign relations, that they implicate diplomacy. And in the El Hadi case out of the Sixth Circuit, the district court there, the situation was a plaintiff crossed the border. It was, I think it was a CBP case again. Plaintiff crosses the border, gets detained, gets detained in a very cold cell overnight and they have to take him to the hospital. He sues CBP. The district court looked at that and said, how is detaining somebody in a cold cell furthering national security? And the Sixth Circuit said, it's not. But that's not the question. You've got to, when you all need to step- Was that a border case? It was a border case, yeah. And that was right after the second Hernandez decision. So the Sixth Circuit didn't even have the benefit of Egbert at that point. But said that you must step back when we consider a special factor, because this is really a special factors analysis question. And that relates to the big picture. And the big picture of, it's not does this further national security, it's if we allow damages remedies against ICE officers or against CBP officers, how does that potentially implicate national security? How does that potentially implicate foreign relations? And it's not to say that the cause of action should or shouldn't exist. The court merely says, that's Congress's or the executive's job to determine those. Those are political issues and the political branches of government ought to decide them. But wouldn't that be true also for Federal Bureau of Narcotics agents trying to stop the drug problem that we should say that it should be up to the agency, that through Congress to decide whether there should be a remedy or not. That Congress should get to decide. But Bivens itself said, no, we're going to imply a private right of action here. And the Supreme Court addressed that in Egbert. And Justice Gorsuch, I believe, said Bivens should be eliminated. We should overrule it. But we can't do that. We're just a lower court. Right. But what the majority said was that were Bivens to come up today, the court probably would not recognize. I believe this is, if my memory is correct, I believe the court said we wouldn't recognize Bivens today. And I believe that's the Egbert case. It could be Hernandez or Ziegler. They get a little mixed up in my head. But they did not overrule Bivens. No. And their point was this has been in the law for, at that point, 47 or 48 years. It's been well established. And so we're going to keep it. We're going to cabinet to these three instances, Bivens and then the Davis v. Passman case and the Carlson v. Gruden case. What's your position on habeas? Is habeas a remedy that is available in this circumstance? Yes, it's an alternative remedial scheme. And that itself precludes creation of the INA. So you're not taking it? I thought the INA had some restrictive review provisions. So that may be the limited habeas. But the government concedes that habeas would be a valid alternative if somebody is being detained. If an unauthorized immigrant is being detained, they can assert a habeas action? I don't want to go too far on that because I don't know the answer exactly. I mean, the habeas petition was not dismissed. It was mooted because she was released. And wouldn't that be an appropriate factor for us to consider about whether there are alternative adequate remedies is to ask whether that remedy is, in fact, available? Correct. And I believe courts have said that it is available. I think there was a period of time where I think it was unclear. I think that goes to 8 U.S.C. 1252. And there's a zipper clause, if I remember right, that for a time was argued that it precluded habeas relief. And then I think the Supreme Court eventually said there was habeas relief in, I'm not, I'm going to say most circumstances. Again, it was a little beyond where this is. But there are other alternative remedial schemes. And indeed, the Egbert case, the Supreme Court held that there are two alternative remedial schemes in place that applied in that case and apply here because they're under the Department of Homeland Security, which ICE is under as well. And those alternative remedial schemes preclude creation of Diven's remedy. That is to say that Congress and the executive... What are the two? 8 U.S.C. 1103 is a statute written that directs the Secretary of Department of Homeland Security to control and direct and supervise employees under the Secretary. And 8 CFR 287.10, which is also referenced in the Fifth Circuit Hernandez case, says that DHS has a complaint process by which anybody can file a complaint alleging misconduct, and DHS will investigate that. So one question that I had, and this may seem very far afield, so feel free to tell me that. But the Zadvydas case... I'm sorry. The Zadvydas case and the Rosales-Garcia en banc that we had, both of them are dealing with people who were detained at great length and were not able to be repatriated to their home countries because their home countries would not accept them. And they were kept in perpetuity in immigration detention. How would those cases interact with this situation? Obviously, she was released because the people realized the error of their ways. I'm sorry, Your Honor. I don't know anything about those cases. Great. That's a fair answer. Thank you. I apologize. Nothing further. The defendants contest... The defendants ask for the court to affirm the district court's decision. Thank you. Your Honor, I think, first of all, in terms of the habeas relief, and we did address this in Eureka as well in about 1252G, I don't know that we would have really been able to do a habeas petition because of that. Now, going back to some other things that counsel raised, he talked about 28710. I would ask you to look at that. Look at that regulation. It doesn't provide any kind of remedial scheme. And if we assume that Loper-Bright is active and alive, it says that agencies cannot make Article III determinations, especially when it comes to constitutional rights, which the Constitution is the ultimate statute in the United States. I would say that you really need to look at Jacobs, where the difference in agency, and Jacobs is still good law unless this court overrules it, the difference in title is irrelevant. You can look at Snowden about the location is irrelevant. You can look at Hicks, where the location is irrelevant. Snowden was in a hotel. Hicks, I think, was a traffic stop. And if you look at Kyle's, that really wasn't about location, but it was about fabrication of evidence, which I would argue is implicated here about fabrication of evidence. They're fabricating a reason to detain her when they don't have a right to detain her. There is a discovery issue here, and there's a lot to discover. We haven't been given the opportunity to conduct discovery. She was actually arrested purportedly for having this final order of removal, but they also said, if you look at document 61-7, that these were criminal charges for which she was being detained. So that reemphasizes that this was normal law enforcement activity where they're trying to enforce criminal law, albeit by violating her constitutional rights. What was the purported criminal charge? Well, it says current criminal charge, and then it says 8 U.S.C. 1182 alien inadmissibility under section 212. So, you know, the motivation here, I think is, I mean, that might maybe go to whether it arises in a new context, but it's still they didn't have a basis to arrest her, and this is fundamental, basic Fourth Amendment principles. How did it happen that she got released after eight days? That's a good question. We haven't been able to really find that out in Discovery. She was transported between, I think, three or four states until she ended back up in Kentucky, and then the agents were there to release her in Boone County in Florence. So she filed a habeas during those eight days? Yes. And so somehow she was able to contact counsel, or did she file it per se? She had counsel. She actually worked for a law firm, and they were able to... She had been detained then because she didn't... I'm not sure all the facts on that, Your Honor, but they were able to file a habeas petition, and then amend the habeas petition, and then it was dismissed as moot. My time is up. We would ask that you overrule the Court's decision and allow us to proceed to Discovery. Thank you. Thank you. Thank you both. The case is submitted, and the clerk may call the next case.